UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMERON JONES,<br><br>  Plaintiff,<br><br>  v.<br><br>COUNTY OF MARIN, et al.,<br><br>  Defendants. | Case No. 22-cv-07349-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Re: ECF No. 12 |

Before the Court is Defendants County of Marin, Marin County District Attorney's Office, Lori Frugoli, Rosemary Slote, Tom McCallister, and Shari Goldman's (collectively "Defendants") motion to dismiss. ECF No. 12. The Court will grant the motion in part and deny it in part.

I.    **BACKGROUND**

This case arises from the alleged discrimination and eventual termination of Plaintiff Cameron Jones from the Marin County District Attorney's Office. Jones began working for the District Attorney's Office on April 19, 2021,[1] in the misdemeanor unit. ECF No. 1 ¶ 27. Jones alleges that around June of 2021, his supervisor and head of the misdemeanor unit, Defendant Goldman, disagreed with a decision he made on a case. *Id.* ¶ 30. Thereafter, Goldman communicated to the District Attorney, Defendant Frugoli, and the Chief Deputy District Attorney, Defendant Slote, that "Jones could not be trusted." *Id.* In February 2022, Goldman went on maternity leave and Defendant McCallister took over her role as head of the misdemeanor unit. *Id.* ¶ 31. Frugoli advised McCallister to watch Jones closely. *Id.* McCallister and Slote also began giving Jones more hearing assignments than his white female colleagues. *Id.* ¶ 44. In April

---

[1] Jones in his complaint alleges both that he started on April 19, 2021, and April 19, 2022. ECF No. 1 ¶¶ 26, 27. He clarifies in his opposition that the 2021 date is correct. ECF No. 17 at 6.

2022, Jones received a negative performance evaluation signed by both Frugoli and Slote. *Id.* ¶ 32. A few weeks later, Jones "voiced concerns with management regarding his 360 Evaluation and feeling[s] of disparate treatment in the office." *Id.* ¶ 33.

Eventually, Jones filed a complaint with the Marin County Human Resources Department. *Id.* ¶ 34. As part of the complaint process, Jones elected to proceed with arbitration before requesting an official investigation. *Id.* Slote, on behalf of the District Attorney's Office, declined to participate. *Id.* Marin County then began an official investigation into Jones's complaint. *Id.* ¶ 36. On June 22, 2022, Jones was interviewed by a third-party investigation firm as part of this investigation. *Id.* ¶ 37. That same day he was fired from the District Attorney's Office.[2] *Id.*

Jones then brought this action against Defendants asserting various federal civil rights and state claims. Defendants now move to dismiss all nineteen claims. ECF No. 12. Jones consents to dismissal of his fourth, sixth, seventh, tenth through sixteenth, eighteenth, and nineteenth claims. ECF No. 17 at 5. Accordingly, these claims are dismissed, without leave to amend. For the reasons set forth below the Court also dismisses his first, second, and eighth claims, with leave to amend. The Court will also dismiss his third claim as to Defendants Goldman and McCallister, with leave, and the County and District Attorney's Office, without leave. The Court will deny the motion to dismiss as to claims five, nine, and seventeen.[3]

## II. JURISDICTION

The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367.

---

[2] Defendants request the Court take judicial notice of Marin County's Personnel Management Regulations and Marin County Administrative Policies and Procedures, Regulation 11. ECF No. 12-3. The Court denies this request because it finds the documents unnecessary to resolve the instant motion.

[3] Defendants also move, in the alternative, for a more definite statement. ECF No. 12. "A rule 12(e) motion for more definite statement is disfavored and is proper only if the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted, meaning the complaint is so vague that the defendant cannot begin to frame a response." *Craigslist, Inc. v. Autoposterpro, Inc.*, No. 08-cv-05069-SBA, 2009 WL 890896, at *4 (N.D. Cal. Mar. 31, 2009). The Court finds that in addition to stating a plausible claim for relief, these claims also provide sufficient detail to notify Defendants of the substance of the claims and to frame a response. Accordingly, Defendants motion for a more definite statement is denied.

## III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A complaint need not contain detailed factual allegations, but facts pleaded by a plaintiff "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). However, the Court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inference." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quotation marks and citation omitted).

## IV. DISCUSSION

### A. Section 1983 Claims

"To make out a cause of action under [S]ection 1983, plaintiff[] must plead that (1) the defendants acting under color of state law (2) deprived plaintiff[] of rights secured by the Constitution or federal statutes." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986).

Jones bases his Section 1983 claims on violations of his First Amendment right to freedom of speech and his Fourteenth Amendment right to equal protection.[4] Defendants contend Jones has failed to adequately allege a deprivation of either right. The Court addresses each claim each

---

[4] Jones's complaint also alleges violations of his Fourteenth Amendment right to due process, but he abandons this claim. ECF No. 17. To the extent his ninth claim is based on due process violations, it is dismissed without leave to amend.

3

in turn.

### 1. First Amendment Retaliation

"[T]he state may not abuse its position as employer to stifle the First Amendment rights its employees would otherwise enjoy as citizens to comment on matters of public interest." *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009) (quotation marks and citation omitted). To state a First Amendment retaliation claim against a government employer under Section 1983, an employee must allege (1) that the employee engaged in constitutionally protected speech, (2) that the employer took an adverse employment action against the employee, and (3) that the employee's speech was a "substantial or motivating" factor in the adverse action. *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003).

Jones brings his First Amendment retaliation claim against all the individual Defendants, as well as the County and District Attorney's Office. He alleges he lodged a complaint with the Marin County Human Resources Department regarding his concerns of racial and gender discrimination within the District Attorney's Office. ECF No. ¶¶ 33-34. He was then terminated. *Id.* ¶ 38. Defendants agree this is sufficient to satisfy the first two elements of the claim: (1) that Jones engaged in constitutionally protected speech and (2) he was subject to an adverse employment action. ECF No. 18 at 7. They contend, however, that Jones's allegations are insufficient to satisfy the third element, that his speech was a substantial or motivating factor in his termination. *Id.* at 6-7. Specifically, Defendants claim Jones fails to allege that those responsible for his termination had any knowledge of his complaints to HR. *Id.* Without allegations that those who terminated him had any knowledge of his protected speech, Defendants argue Jones fails to adequately allege his speech was a substantial or motivating factor for his termination. *Id.*

Defendants' are incorrect that Jones fails to allege anyone within the District Attorney's Office had knowledge of his grievance. Jones alleges that when he lodged his complaint he elected to proceed with arbitration before requesting an official investigation. ECF No. 1 ¶ 34. He alleges the Chief Deputy District Attorney, Slote, declined on behalf of the District Attorney's Office to participate in the arbitration process. *Id.* Thus, Slote had knowledge of Jones's grievance. Soon thereafter Frugoli and Slote terminated Jones. *Id.* ¶ 37. This is sufficient to

4

plausibly allege his speech was a substantial or motivating factor in his termination. *See Coszalter*, 320 F.3d at 977 ("proximity in time between the protected action and the allegedly retaliatory" act can support an inference that retaliation was a substantial or motivating factor behind a defendant's adverse employment action.)

While these allegations are sufficient to allege a First Amendment retaliation claim against Frugoli and Slote, who Jones alleges terminated him, he fails to plead any facts connecting Goldman and McCallister to this alleged deprivation of his First Amendment rights. Regarding Goldman, Jones alleges she was his supervisor when he started at the District Attorney's Office in April 2021. ECF No. 1 ¶ 27. He claims Goldman disagreed with a decision he made and told Frugoli and Slote he could not be trusted. *Id.* ¶ 30. However, in February 2022, before Jones filed his complaint, Goldman went on maternity leave. *Id.* ¶ 31. The complaint is devoid of any facts connecting Goldman to his termination. The complaint is similarly deficient as to McCallister. Jones alleges McCallister took over as his supervisor in the misdemeanor unit when Goldman went on maternity leave. *Id.* He also claims McCallister discriminated against him by giving him more work than his colleagues. *Id.* ¶ 44. But Jones fails to connect McCallister's acts to the deprivation of his First Amendment rights and ultimate termination. Rather, the complaint specifies that it was Frugoli and Slote who decided to fire him. *Id.* ¶ 25.

Accordingly, the Court finds Jones has stated a Section 1983 claim for First Amendment retaliation against Defendants Frugoli and Slote and declines to dismiss Jones's third claim for relief against them. The Court, however, grants the motion to dismiss the third claim against Defendants Goldman and McCallister, with leave to amend. The Court also dismisses the third claim against the County and District Attorney's Office as duplicative of his *Monell* claim for First Amendment retaliation, without leave to amend. *See Segura v. City of La Mesa*, 647 F. Supp. 3d 926, 941 (dismissing Section 1983 claim that was duplicative of *Monell* claim).[5]

---

[5] Defendants make a very general argument for qualified immunity in their opening brief, asserting that "Plaintiff has not alleged facts suggesting that the Individual County Defendants committed any clearly established wrongful act." ECF No. 12 at 49. In his opposition, and as set forth elsewhere in this order, Plaintiff describes with specificity the nature of the alleged deprivation of his constitutional rights. In reply, Defendants argue only that "neither the Complaint nor Opposition have established that the Individual Defendants violated Plaintiff's

### 2. Fourteenth Amendment Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). This prohibits "purposeful discrimination by state actors, in the workplace and elsewhere, based solely on an individual's membership in a protected class." *Bator v. State of Hawai'i*, 39 F.3d 1021, 1027 (9th Cir. 1994). A plaintiff may make out a prima facie case of discrimination by demonstrating that: (1) they were a member of a protected class; (2) they were qualified for their position; (3) they experienced an adverse employment action; and (4) similarly situated individuals outside their protected class were treated more favorably. *Ballou v. McElvain*, 29 F.4th 413, 422 (9th Cir. 2022).

Jones brings two Section 1983 *Monell* claims against the County and District Attorney's Office based upon deprivation of his Fourteenth Amendment equal protection rights. Jones alleges he was treated differently than his similarly situated white female colleagues. Specifically, he alleges he was given a higher workload and was the only one to receive a performance evaluation. ECF No. 1 ¶¶ 2, 32, 33, 44. The Court finds this is sufficient to state a claim under the Equal Protection Clause. Jones, as a Black man, is a member of a protected class, who was allegedly qualified for his position, yet experienced adverse employment actions compared to individuals outside his class. The Ninth Circuit has "specifically identified unfavorably altering job assignments, unfavorable performance evaluations and displaying a hostile attitude toward a plaintiff as examples of adverse employment actions that, if taken with a discriminatory purpose, would violate an employee's . . . constitutional rights." *Ballou*, 29 4th at 426 (quotation marks and citation omitted). Taking Jones's allegations as true, they plausibly allege that Jones was discriminated against during his employment due to his race and/or gender. Accordingly, the

---

Constitutional rights, which would deprive them of qualified immunity." Because the Court concludes that Plaintiff has adequately pleaded a violation of his Constitutional rights, it rejects Defendants' claim to qualified immunity without further discussion.

Court finds Jones has sufficiently alleged an underlying equal protection violation to support his eighth and ninth claims.

### B. *Monell* Liability

A government entity cannot be held liable under Section 1983 unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights. *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978). "[M]unicipalities may be liable under § 1983 for constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policy maker." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019).

Jones seeks to hold the County and District Attorney liable under *Monell* for First Amendment retaliation and Fourteenth Amendment equal protection violations based on the acts of a final policy maker. He also brings a *Monell* claim for equal protection violations based on a policy, practice, or custom. The County and District Attorney's Office argue Jones's *Monell* claims fail under either theory. ECF No. 12 at 30–33, 35–37; ECF No. 18 at 14–19.

#### 1. Final Policy Maker

"If the decision to adopt [a] particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government 'policy.'" *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). Thus, a local government can be liable for an official's conduct when "the official (1) had final policy making authority concerning the action alleged to have caused the particular constitutional or statutory violation at issue and (2) was the policymaker for the local governing body for the purposes of the particular act." *Weiner v. San Diego Cnty.*, 210 F.3d 1025, 1028 (9th Cir. 2000) (quotation marks and citation omitted).

Jones alleges that the District Attorney, Frugoli, actively discriminated against him and ultimately terminated him after he made complaints of discrimination in the office. ECF No. 1

¶¶ 25, 26, 38, 39. As the final policymaker at the Marin County District Attorney's Office,[6] he contends the County and District Attorney's Office can be liable for her acts. Defendants argue this theory of *Monell* liability fails because "it does not allege sufficient factual information to establish any action by a policymaker that could be considered the establishment of any 'policy'" and that "[t]hese single, solitary acts, if true, do not establish a policy for ongoing actions." ECF No. 12 at 31. But under the final policymaker theory, Jones does not have to allege a policy or custom. "A municipality can be liable even for an isolated constitutional violation . . . when the person causing the violation has final policymaking authority." *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003). Here, Jones alleges that Frugoli treated him differently because of his race and gender. Specifically, he alleges he was assigned more work than his white female colleagues and singled out to receive a negative performance evaluation by Frugoli and Slote. ECF No. 1 ¶¶ 32, 42–44. He further alleges Frugoli fired him in retaliation after he complained of discrimination in the office. *Id.* ¶¶ 37-39, 137. This is sufficient to state a *Monell* claim based on the acts of a final policymaker. *See Bozajian v. Cnty. of Los Angeles*, No. 2:12-cv-00625-ODW, 2013 WL 327409, at *6 (C.D. Cal. Jan. 29, 2013) (denying motion to dismiss *Monell* claim when plaintiff alleged retaliatory acts were done under direct orders from the District Attorney). Accordingly, the Court declines to dismiss the fifth and ninth *Monell* claims against the County and District Attorney's Office.

### 2. Policy, Practice, or Custom

"[A] local government may be held liable when implementation of its official policies or established customs inflicts the constitutional injury." *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (quotation marks and citation omitted).

Jones alleges Frugoli and Slote "acted pursuant to an expressly adopted official policy or a

---

[6] Defendants do not dispute that Frugoli had final policy making authority regarding Jones's employment in her capacity as District Attorney. Thus, for purposes of this motion the Court assumes, without deciding, that Frugoli is a final policy maker under California Law. *See Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737 (1989) (determination of whether the official had final policymaking authority concerning the action alleged to have caused the violation at issue is a question of state law.)

1    longstanding practice or custom of Defendant Marin County DA of retaliating, discriminating and

2    silencing any criticism of a failing administration." ECF No. 1 ¶ 121.  Such conclusory

3    allegations, without supporting factual allegations, are insufficient to state a *Monell* claim.  *See AE*

4    *ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (to state a *Monell* claim

5    plaintiff must allege facts to support that a policy or custom existed.)  The complaint fails to

6    identify what, if any, policies the County or District Attorney's Office have.  And apart from his

7    own experience of discrimination, Jones doesn't allege any other person was subject to treatment

8    that would support an inference of "a widespread practice . . . so permanent and well settled to

9    constitute a custom."  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quotation marks

10   and citation omitted).[7]

11   Jones contends he has stated a *Monell* claim based on a policy of inaction or omission.

12   ECF No. 17 at 15.  He argues that because "he voiced concerns and filed a grievance against the

13   District Attorney's Office" the County was "on notice that such equal protection violations were

14   occurring."  *Id*. at 15–16.  But again, Jones fails to allege any facts regarding what policies were in

15   place, "or what type of constitutionally-mandated [policy] was lacking."  *Waggy v. Spokane Cnty.*

16   *Wash.*, 594 F.3d 707, 714 (9th Cir. 2010).  Accordingly, the Court dismisses Jones's eighth claim

17   against the County and District Attorney's Office, with leave to amend.

18   **C.     Section 1985(3) and 1986 Claims**

19   "While § 1983 provides a cause of action if *one* person deprives an individual of his

20   constitutional rights, § 1985(3) provides a cause of action if *two or more* persons conspire to

21   deprive an individual of his constitutional rights."  *Pasadena Republican Club v. W. Just. Ctr.*, 985

22   F.3d 1161, 1171 (9th Cir. 2021).  To state a cause of action under Section 1985(3), a plaintiff must

23   allege:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or

---

[7] Jones bring up other instances of discrimination in his briefing but those are not alleged in the complaint.

9

privilege of a citizen of the United States.

*Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (citation omitted). The second element requires that in addition to identifying a legally protected right, a plaintiff must allege a deprivation of that right motivated "by some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). A Section 1985 claim "must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v. L.A. Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988).

While Jones pleads a Section 1983 conspiracy, both parties proceed as if Jones asserted a claim for conspiracy under Section 1985(3). ECF No. 12 at 22–26; ECF No. 17 at 9–11. Accordingly, the Court construes Jones's first claim for relief as a claim for conspiracy under Section 1985(3). Jones bases this claim on a deprivation of his First and Fourteenth Amendment rights. ECF No. 1 at 10–11. Defendants argue this claim should be dismissed because there are no allegations to support that an agreement between two or more of them existed to deprive Jones of these rights. ECF No. 12 at 22–25. The Court agrees. Jones alleges that Defendants "plotted, coordinated, reached, and entered into a specific agreement, express or implied, with the specific common purpose to deprive" Jones of his rights. ECF No. 1 ¶ 108. However, Jones fails to allege any specific facts to support this assertion. Jones's conclusory allegations of a conspiracy are insufficient. *See Bell Atl. Corp v. Twombly*, 550 U.S. 544, 556 (to state a claim for conspiracy plaintiff must plead "enough factual matter (taken as true) to suggest that an agreement was made.") Accordingly, the Court dismisses Jones's first claim, with leave to amend.

Jones also brings a claim under Section 1986 for failure to prevent a conspiracy. "A claim can be stated under [S]ection 1986 only if the complaint contains a valid claim under [S]ection 1985." *Karim-Panahi*, 839 F.3d at 626. Because Jones has failed to state a claim for conspiracy under Section 1985, he has also failed to state a claim for failure to prevent a conspiracy under Section 1986. *Id.* Thus, the Court also dismisses Jones's second claim, with leave to amend.

### D. California Labor Code Section 1102.5 Claim

California Labor Code Section 1102.5(b) prohibits an employer, or anyone acting on the

1    employer's behalf, from retaliating against "an employee for disclosing information" to "another
2    employee who has the authority to investigate, discover, or correct the violation or noncompliance
3    . . . if the employee has reasonable cause to believe that the information discloses a violation of
4    state or federal statute." "To establish a prima facie case for retaliation under [S]ection 1102.5, an
5    employee must show (1) that he engaged in protected activity, (2) that he was thereafter subject to
6    an adverse employment action by his employer, and (3) that there was a causal link between the
7    protected activity and the adverse employment action." *Love v. Motion Indus., Inc.*, 309 F. Supp.
8    2d 1128, 1134 (N.D. Cal. 2004).

9        Here, Jones alleges he engaged in protected activity when he filed a grievance with HR
10   alerting them to the racial and gender discrimination he experienced in the office. ECF No. 1 ¶ 34.
11   He also alleges he was fired after making the complaint and thus subject to an adverse
12   employment action. *Id.* ¶ 38. Defendants contend he fails to allege a causal link between the
13   protected activity and his termination, as he makes no allegations that the District Attorney's
14   Office was aware of his complaints to HR. ECF No. 12 at 45. As explained above, Jones does
15   allege the District Attorney's Office knew of his complaints to HR, as he claims that as part of the
16   grievance process, he elected to engage in arbitration. ECF No. 1 ¶ 34. He alleges Slote declined,
17   on behalf of the District Attorney's Office, to participate. *Id.* Thus, Slote, the Chief Deputy
18   District Attorney, was aware of Jones's grievance. Further, he alleges the day he interviewed as
19   part of County's investigation into his complaints, he was fired. *Id.* ¶¶ 37, 38. This is sufficient to
20   allege a causal link between the protected activity and his termination. *See Soloway v. Cnty. of*
21   *Contra Costa*, No. 20-cv-02287-JSW, 2021 WL 6803156, at *4 (N.D. Cal. Mar. 1, 2021)
22   ("Causation may be inferred from circumstantial evidence, including Contra Costa's knowledge
23   that Soloway engaged in protected activities and the proximity in time between her reporting and
24   her allegedly retaliatory termination.") Accordingly, the Court declines to dismiss the seventeenth
25   cause of action.

## CONCLUSION

27       For the foregoing reasons, the Court grants Defendants' motion to dismiss the fourth, sixth,
28   seventh, tenth through sixteenth, eighteenth, and nineteenth claims, without leave to amend. The

11

Court also grants Defendants' motion to dismiss the first, second, and eighth claims, with leave to amend. The Court grants Defendants' motion to dismiss the third claim as to Defendants Goldman, McCallister, with leave to amend, and the County and District Attorney's Office, without leave. The Court, however, denies Defendants' motion to dismiss claim three against Defendants Frugoli and Slote, as well as claims five, nine, and seventeen. Jones may file an amended complaint within 21 days, solely to correct the deficiencies identified in this order. If no amended complaint is filed by that date, the claims dismissed in this order will be dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: February 1, 2024



JON S. TIGAR
United States District Judge